For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Enrique PEREZ–PENA,**
**Defendant–Appellee.**

No. 05–5054.

United States Court of Appeals,
Fourth Circuit.

Argued: May 26, 2006.

Decided: June 30, 2006.

**ARGUED:** Eric David Goulian, Assistant United States Attorney, Office of the United States Attorney, Raleigh, North Carolina, for Appellant. George Alan Du-Bois, Assistant Federal Public Defender, Office of the Federal Public Defender, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Office of the United States Attorney, Raleigh, North Carolina, for Appellant. Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellee.

Before WILKINS, Chief Judge, SHEDD, Circuit Judge, and HAMILTON, Senior Circuit Judge.

Vacated and remanded by published opinion. Chief Judge WILKINS wrote the opinion, in which Judge SHEDD and Senior Judge HAMILTON joined.

## OPINION

WILKINS, Chief Judge:

The United States appeals Enrique Perez–Pena's sentence for illegally reentering the United States after being deported, *see* 8 U.S.C.A. § 1326(a), (b)(2) (West 2005). The district court imposed a below-guidelines variance sentence primarily to avoid an "unwarranted sentence disparit[y]," 18 U.S.C.A. § 3553(a)(6) (West 2000), between Perez–Pena and defendants that had participated in a "fast-track" program. Finding the sentence unreasonable, we vacate and remand for resentencing.

### I.

#### A.

"Fast-tracking" refers to a procedure that originated in states along the United States–Mexico border, where district courts experienced high caseloads as a result of immigration violations. To pre-serve resources and increase prosecutions, prosecutors sought to obtain pre-indictment pleas by offering defendants lower sentences through charge-bargaining or through motions for downward departure.

Congress officially sanctioned the use of departure fast-track programs in 2003, with its enactment of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003). In conjunction with authorizing the Attorney General to create and implement such programs, Congress directed the Sentencing Commission to promulgate "a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." *Id.* Pursuant to this directive, the Commission adopted § 5K3.1 of the sentencing guidelines, providing that "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." *United States Sentencing Guidelines Manual* § 5K3.1, p.s. (2004).

The Attorney General provided guidelines for fast-track programs in a 2003 memorandum to all United States Attorneys. Under these guidelines, the programs are to be "reserved for exceptional circumstances, such as where the resources of a district would otherwise be significantly strained by the large volume of a particular category of cases." J.A. 70. The memorandum goes on to describe the criteria to be used in determining whether

such exceptional circumstances exist: (1) the district must face an "exceptional local circumstance with respect to a specific class of cases" that warrants expediting their disposition; (2) declination of such cases in favor of state prosecution must be unavailable or unwarranted; (3) the cases must be highly repetitive and present similar fact scenarios; and (4) the cases must not involve an offense that the Attorney General has designated a "crime of violence." *Id.* at 71 (internal quotation marks omitted).

The memorandum further specifies that any fast-track program must require the defendant to enter into a written plea agreement and to waive his rights to file pretrial motions, to appeal, and to challenge the resulting conviction under 28 U.S.C.A. § 2255 (West Supp.2006), except on the ground of ineffective assistance of counsel. These requirements apply to charge-bargaining fast-track programs as well as PROTECT Act programs involving downward departures.

Acting pursuant to authority delegated by the Attorney General, the Deputy Attorney General approved fast-track programs in 13 districts for illegal reentry offenses under 8 U.S.C.A. § 1326. No such program has been approved for the Eastern District of North Carolina, however.

### B.

Perez–Pena, a citizen of Mexico, illegally entered the United States in 1993. In July 1999, he was convicted in Florida of the felony of committing a lewd, lascivious, or indecent act upon a child. Perez–Pena's conviction was based on his having had sexual intercourse with a 12–year–old girl on several occasions in late 1998, when he was 21. He was sentenced to two years of house arrest, to be followed by three years of probation, and he was deported on July 28, 1999.

Perez–Pena reentered the United States without permission in early 2004. A little more than a year later, he was arrested in Greenville, North Carolina following a traffic stop. As a result, Perez–Pena was indicted on a single count of reentering the United States after having been deported. *See* 8 U.S.C.A. § 1326(a), (b)(2). He pleaded guilty to the indictment without a plea agreement.

At sentencing, the district court began by calculating Perez–Pena's sentencing guideline range. Because Perez–Pena had been convicted of a felony crime of violence prior to his deportation—his indecent act offense—the district court applied a 16–level increase to his base offense level of 8. *See* U.S.S.G. § 2L1.2(a), (b)(1)(A)(ii). Application of a 3–level adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, reduced the total offense level to 21. With a Criminal History Category of I, Perez–Pena's guideline range was 37 to 46 months. The district court then heard argument on a request by Perez–Pena for a below-guidelines sentence. Perez–Pena contended that such a sentence was necessary to avoid an unwarranted sentence disparity with defendants who had received "fast-track" sentences. These defendants included not only defendants in other districts but also a group of 48 illegal immigrants who Perez–Pena maintained had been arrested on a single occasion the prior month in the Eastern District of North Carolina and had been allowed to plead guilty to illegal entry under 8 U.S.C.A. § 1325 (West 2005), rather than face possible prosecution for the more serious offense of illegal reentry. Perez–Pena also argued that failure to impose a below-guidelines sentence would create a disparity with at least one other similarly situated defendant in the Eastern District of North

Carolina who had received a reduction from a different district court judge on the basis of fast-track disparity. Perez–Pena further argued that his prior conviction was for sexual conduct to which the victim consented, and that he was sentenced only to two years of house arrest followed by three years of probation. For these reasons, Perez–Pena requested a six-month sentence.

In contrast, the Government sought a 37–month sentence, the low end of the applicable guideline range. The Government denied that any disparity produced by such a sentence would be "unwarranted" since Perez–Pena did not participate in any fast-track program and was not similarly situated to the illegal immigrants who had recently received expedited treatment in the Eastern District of North Carolina because they were not known to have had any prior convictions. The Government also emphasized that the victim of Perez–Pena's prior crime was only 12 years old.

At the close of arguments, the court imposed a sentence of 24 months, which was 13 months less than the low end of the guideline range and the equivalent of a four-level downward departure. As justification for sentencing Perez–Pena below the applicable guideline range, the court cited the sentencing disparity issues with defendants both within and outside the Eastern District of North Carolina. The court also noted Perez–Pena's "total lack of criminal record with the exception of the predicate offense which was committed some seven years ago with the alleged consent of both parties." J.A. 235.

## II.

■ The Government first argues that the district court erred to the extent that it imposed a below-guidelines sentence to account for sentences received by defendants participating in fast-track programs. We agree. *See United States v. Galicia–Cardenas,* 443 F.3d 553, 555 (7th Cir.2006) (per curiam) (vacating as unreasonable non-fast-track defendant's sentence that was reduced the equivalent of four levels below guideline range to avoid disparity with sentences of fast-track defendants); *cf. United States v. Marcial–Santiago,* 447 F.3d 715, 719 (9th Cir.2006) (affirming as reasonable refusal by district court to impose below-guidelines sentence based on alleged unwarranted disparity with fast-track defendants); *United States v. Martinez–Martinez,* 442 F.3d 539, 542–43 (7th Cir.2006) (same); *United States v. Jimenez–Beltre,* 440 F.3d 514, 519 (1st Cir.2006) (en banc) (same); *United States v. Sebastian,* 436 F.3d 913, 916 (8th Cir.2006) (same).

In *United States v. Booker,* 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court held that the Sixth Amendment right to a jury trial is violated when the district court, acting pursuant to a mandatory guidelines system, imposes a sentence greater than the maximum authorized by the facts found by the jury alone. To remedy this problem, the Court severed and excised the provisions of the Sentencing Reform Act [1] that mandated sentencing and appellate review in conformance with the guidelines. *See Booker,* 543 U.S. at 259, 125 S.Ct. 738 (severing and excising 18 U.S.C.A. § 3553(b)(1) (West Supp.2006) and 18 U.S.C.A. § 3742(e) (West 2000 & Supp. 2006)). This excision rendered the guidelines "effectively advisory," *id.* at 245, 125 S.Ct. 738, and replaced the previous stan-

---

**1.** Sentencing Reform Act of 1984, Pub.L. No. 98–473, ch. II, 98 Stat.1987–2040 (1984) (codified as amended at 18 U.S.C.A. §§ 3551– 3742 (West 2000 & Supp.2006) and at 28 U.S.C.A. §§ 991–998 (West 1993 & Supp. 2006)).

dard of review with review for reasonableness, *see id.* at 261, 125 S.Ct. 738.

That the guidelines are non-binding in the wake of *Booker* does not mean that they are irrelevant to the imposition of a sentence. To the contrary, remaining provisions of the Sentencing Reform Act require the district court to consider the guideline range applicable to the defendant and pertinent policy statements of the Sentencing Commission. *See* 18 U.S.C.A. § 3553(a)(4), (a)(5) (West Supp.2006); *Booker,* 543 U.S. at 264, 125 S.Ct. 738 (stating that district courts "must consult [the] Guidelines and take them into account when sentencing"). In addition to the guidelines, the district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C.A. § 3553(a)(1) (West 2000); the court also must ensure that the sentence it imposes "fulfill[s] the congressionally established objectives for sentencing: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; ... providing restitution to victims," *United States v. Green,* 436 F.3d 449, 455 (4th Cir.2006), *cert. denied,* —— U.S. ——, 126 S.Ct. 2309, 164 L.Ed.2d 828 (2006) (No. 05–10474); *see* 18 U.S.C.A. § 3553(a)(2), (a)(7) (West 2000). Further, the court must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6); *see Green,* 436 F.3d at 455.

Thus, in imposing a sentence after *Booker,* the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. *See United States v. Hughes,* 401 F.3d 540, 546 (4th Cir.2005). Next, the court must "determine whether a sentence within that range ... serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *Green,* 436 F.3d at 456. The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. *See* 18 U.S.C.A. § 3553(c) (West Supp.2006); *Hughes,* 401 F.3d at 546 & n. 5. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. *See Green,* 436 F.3d at 455–56.

We review the sentence for reasonableness, considering "the extent to which the sentence ... comports with the various, and sometimes competing, goals of § 3553(a)." *United States v. Moreland,* 437 F.3d 424, 433 (4th Cir.2006), *cert. denied,* —— U.S. ——, 126 S.Ct. 2054, 164 L.Ed.2d 804 (2006) (No. 05–10393). When we review a sentence outside the advisory guideline range—whether as a product of a departure or a variance—we consider whether the district court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the guideline range. *See id.* at 433–34 (variance sentence); *United States v. Hairston,* 96 F.3d 102, 106 (4th Cir.1996) (departure sentence). If a district court provides an inadequate statement of reasons or relies on improper factors in imposing a sentence outside the properly calculated advisory guideline range, the sentence will be found unreasonable and vacated. *See Green,* 436 F.3d at 457.

We now turn to the facts before us. The outcome here depends largely on whether a sentencing disparity between a fast-track sentence and a non-fast-track

sentence can be "unwarranted" within the meaning of § 3553(a)(6). Different arguments pertain to disparities with PROTECT Act fast-track sentences than do disparities with charge-bargained sentences. We will therefore address these types of disparities separately, beginning with disparities resulting from charge bargaining.[2]

### A.

There is no denying that Congress has decided that governmental law enforcement or administrative concerns warrant sentencing disparities between defendants with similar criminal conduct and records, under some circumstances. For example, Congress specifically provided in the Sentencing Reform Act that, "[u]pon motion of the Government, [district courts] shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C.A. § 3553(e) (West Supp.2006). This subsection reflects Congress' determination that sentencing disparities between defendants with similar criminal conduct and records are warranted to the extent that the Government determines that a particular defendant has advanced its interest in prosecuting other offenders. Indeed, that is exactly what the Government does when, through charge-bargaining, it obtains a sentence for a fast-track defendant that is lower than he otherwise might have faced considering his conduct. That is so because the defendant's acceptance of the fast-track plea bargain frees up governmental resources that the Government can then use to prosecute other offenders. *See* J.A. 70 (Attorney General's memorandum stating that " 'fast-track' programs are based on the premise that a defendant who promptly agrees to participate in such a program has saved the government significant and scarce resources that can be used in prosecuting other defendants and has demonstrated an acceptance of responsibility above and beyond what is already taken into account by the adjustments contained in U.S.S.G. § 3E1.1").

Perez–Pena argues that a sentencing disparity between two otherwise similar defendants, one who accepts a fast-track plea bargain and another who cannot do so because he was arrested in a non-fast-track district, is unwarranted because the resulting disparity is based only on the jurisdiction in which the defendants were arrested. That is an overly simplistic view, however, because the disparity is due not to the location of the arrest, but rather to the fact that the Government offered only one of the defendants a plea bargain. Of course, whether the Government wishes to plea bargain with a particular defendant often depends on any number of factors far beyond the defendant's control. The fortuity of whether a defendant is offered a fast-track plea bargain is not different in any relevant way from the fortuity of whether a defendant possesses information that he can offer the Government in return for a reduced sentence. Defendants who are fortunate enough to be able to offer the Government what it wants can obtain reduced sentences not because they deserve the reductions, but because the reductions are the leverage that allows the Government to get what it wants. Thus, the resulting reductions (and disparities with otherwise similarly situated defendants) serve an important purpose.

**2.** We intend this discussion to apply as well to Perez–Pena's allegations concerning the illegal immigrants arrested within the Eastern District of North Carolina.

Critically, to sentence defendants who have not been offered plea bargains as if they had been offered and had accepted plea bargains would effectively nullify the Government's discretion to determine which defendants it wishes to receive the benefit of a bargain. *Cf. United States v. Banuelos–Rodriguez*, 215 F.3d 969, 976 (9th Cir.2000) (en banc) ("[A]llowing a district court to depart in order to equalize the sentences of defendants who had pleaded guilty to committing different crimes (even if they had engaged in similar conduct) would implicate the authority given to United States attorneys to negotiate plea bargains." (internal quotation marks omitted)). The effect of such sentencing would be to give the benefit of the Government's plea bargains to defendants with whom the Government did not wish to bargain. Congress certainly would not have sanctioned that result.

▪ Moreover, refusing to sentence Perez–Pena as if he were a fast-track defendant is not "penalizing" him for not accepting a deal that the Government never offered, *but see United States v. Medrano–Duran*, 386 F.Supp.2d 943, 948 (N.D.Ill.2005) ("[I]t hardly makes sense to penalize [a defendant in a non-fast-track jurisdiction] for failing to meet the requirements of a program that was never available to him."); rather, it is simply not rewarding him for conferring a benefit upon the Government that he did not confer. By virtue of his not receiving this reward, it is true that his sentence will be greater than it would have been had he reached a deal with the Government. But comparing the sentences of defendants who helped the Government to those of defendants who did not—regardless of why some were in a position to help and others were not—is comparing apples and oranges. For this reason, Congress could not have intended that disparities resulting from the exercise of prosecutorial discretion could be determined to be "unwarranted." [3]

### B.

Sentencing disparities between defendants receiving fast-track downward departures under the PROTECT Act and those not receiving such departures are "warranted" as a matter of law for all the same reasons, as well as for the additional reason that Congress and the Sentencing Commission *explicitly* sanctioned such disparities. In enacting the PROTECT Act, Congress directed the Commission to authorize a downward departure of no more than four levels if the Government moved for such a departure pursuant to a fast-track program authorized by the Attorney General. *See* Pub.L. No. 108–21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003). As the Sentencing Guidelines had the force of law at the time, *see Booker*, 543 U.S. at 233–34, 125 S.Ct. 738, Congress necessarily intended that defendants who did not benefit from such motions—whether because the Attorney General had not authorized a program in that district or because the Government determined that the program was not appropriate for a particular defendant—would receive higher sentences than those who did benefit. *Cf.*

---

3. In fact, allowing sentencing courts to determine whether they should sentence non-fast-track defendants as if they had been fast-tracked would *produce* "unwarranted sentence disparities" between similarly situated non-fast-track defendants, some of whom would benefit from the existence of others' fast-track deals and some of whom would not.

*Cf. United States v. Eura*, 440 F.3d 625, 633 (4th Cir.2006) (noting that "giving a sentencing court the authority to sentence a defendant based on its view of an appropriate ratio between crack cocaine and powder cocaine would inevitably result in an unwarranted disparity between similarly situated defendants").

*United States v. Montes–Pineda,* 445 F.3d 375, 379–80 (4th Cir.2006) ("Congress seems to have endorsed at least some degree of disparity by expressly authorizing larger downward departures for defendants in 'fast track' districts."); *United States v. Eura,* 440 F.3d 625, 634 (4th Cir.2006) (holding that the variance from the 100:1 crack cocaine/powder cocaine ratio chosen by Congress "impermissibly usurp[ed] Congress's judgment about the proper sentencing policy for cocaine offenses" (internal quotation marks omitted)). In following Congress' directive and promulgating U.S.S.G. § 5K3.1, p.s., the Sentencing Commission also sanctioned these disparities.

Perez–Pena argues that PROTECT Act disparities were not so much explicitly sanctioned by Congress and the Commission as they were "an undesirable, albeit not unexpected, by-product of the pursuit of more illegal reentry prosecutions." Br. of Appellee at 25. While it is true that Congress and the Commission may not have intended such disparities for their own sake, they surely recognized that such disparities were necessary to achieve the twin goals of obtaining more prosecutions and limiting downward departures to jurisdictions and defendants selected by the Government. If defendants in fast-track districts expected to receive similar sentences regardless of whether they participated in a program, defendants would have little incentive to participate. And, if defendants in non-fast-track districts were sentenced as if they had participated in fast-track programs, then the Government would be effectively deprived of its discretion to decide which districts would have fast-track programs and which defendants within those jurisdictions should be allowed to participate. These results would amount to a rejection of Congress' and the Sentencing Commission's policy choices. *See Sebastian,* 436 F.3d at 916 ("In this instance, Congress and the President, by directing that the Sentencing Commission provide for guideline departures in certain judicial districts, concluded that the advantages stemming from fast-track programs outweigh their disadvantages, and that any disparity that results from fast-track programs is not unwarranted." (internal quotation marks omitted)).[4]

In short, there is no reason to believe that Congress intended that sentencing disparities between defendants who benefitted from prosecutorial discretion and those who did not could be "unwarranted" within the meaning of § 3553(a)(6). We therefore conclude that the need to avoid such disparities did not justify the imposition of a below-guidelines variance sentence.

### III.

◼ The Government also argues that the variance sentence was not justified by the finding that Perez–Pena had "a total lack of criminal record with the exception of the predicate offense which was commit-

---

4. Perez–Pena maintains that the fact that other defendants have received fast-track sentences is relevant to § 3553(a) factors other than the "unwarranted sentence disparity" factor, including the need to impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense and to promote respect for the law. The record contains no evidence that the district court reduced Perez–Pena's sentence on this basis. And, the sentences imposed upon fast-track defendants have no significant relevance to these factors in any event. Such sentences represent *compromises* between the Government's administrative and law enforcement interests and its interest in having the defendant receive a sentence sufficient to reflect the seriousness of the offense and to promote respect for the law. It is for this reason that comparing the sentences to non-fast-track sentences would be improper.

ted some seven years ago with the alleged consent of both parties." J.A. 235. We agree.

Initially, we note that these findings by the district court do not indicate that Perez–Pena is significantly more deserving of a lower sentence than the typical defendant whose illegal reentry crime has produced the 37–46–month guideline range. Consensual sexual intercourse between a 21–year–old defendant and a 12–year–old girl constitutes a typical example of statutory rape, which the Commission has determined triggers a 16–level enhancement, *see* U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii).[5] *Cf. Moreland,* 437 F.3d at 435–36 (concluding that decision to impose below-guidelines sentence was reasonable when guidelines called for defendant to be treated as a career offender, *see* U.S.S.G. § 4B1.1, but his three drug offenses all involved a small quantity, were nonviolent, and did not involve a firearm). Further, since Perez–Pena was in the lowest criminal history category, his guideline range already reflected that his sex crime was his only prior offense. Given that the Commission specifically intended Perez–Pena's guideline range to apply to defendants under the facts identified by the district court, the mere recitation of such facts is not a valid reason why the guideline range does not "serve[ ] the factors set forth in § 3553(a)," *Green,* 436 F.3d at 456. *See id.* at 455–56 (explaining that the reasons for imposing a variance sentence must be tied to the § 3553(a) factors). We therefore conclude that this latter basis for a below-guidelines variance is also invalid.

Consequently, we vacate the sentence as unreasonable. *See id.* at 457.

### IV.

In sum, because neither of the bases offered by the district court justified imposition of a below-guidelines variance sentence, we vacate Perez–Pena's sentence and remand to the district court for resentencing.[6]

*VACATED AND REMANDED*

---

5. In *United States v. Pierce,* 278 F.3d 282, 289–90 (4th Cir.2002), we held that violation of the North Carolina indecent liberties statute is a "crime of violence" as that term is employed in the career offender guideline because the statute "protects not only against the serious risk of physical injury but also against the application of constructive force created by the nature of the relationship of adult and child."

6. Our decision should not be read to foreclose the imposition of a variance sentence on remand for a reason not adequately articulated by the district court during imposition of the now-vacated sentence.