DIANA GRIBBON MOTZ, Circuit Judge,
dissenting:
With respect, I dissent from the majority’s decision to reverse, as unreasonably lenient, Abu Ali’s sentence of thirty years’ imprisonment followed by thirty years’ supervised release. In sentencing Abu Ali, the district court correctly calculated the Guidelines range and carefully considered the applicable statutory factors. The court then explained its several, entirely reasonable justifications for finding this sentence — a sentence less than the Guidelines recommendation of life imprisonment, *270 but substantially more than the twenty-year statutory minimum — “sufficient, but not greater than necessary,” to achieve the statutory sentencing goals. 18 U.S.C.A. § 3553(a) (West 2000 & Supp.2007). In every respect, the district court thus properly sentenced Abu Ali in full accord with Supreme Court precedent. See, e.g., Gall v. United States, — U.S.-, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); Kimbrough v. United States, — U.S. -, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). This is not to say that the district court imposed the only possible reasonable sentence. But it certainly fashioned a reasonable sentence; Gall and Kimbrough thus mandate affirmance.
While purporting to adhere to Gall and Kimbrough, the majority finds no “compelling justification” for the clearly reasonable sentence imposed here only by refusing to do so, and so fails to conduct a true abuse-of-discretion review. In addition to refusing to follow the controlling legal principles governing appellate review of sentencing determinations, the majority also fails to consider most of the district court’s careful and compelling justifications for the sentence imposed, and it offers a singularly unpersuasive critique of the only justification it does consider.
These critical errors — failing to conduct the proper, deferential form of review and failing to evaluate the district court’s justifications as a whole — produce a truly wrongheaded judgment. Even a glance at the cases in which the Supreme Court has granted certiorari, vacated, and remanded for consideration in light of Gall and Kim-brough indicates just how out of step the majority is. For the Court has repeatedly vacated judgments of appellate courts (including this one) that committed the very same errors by reversing sentences in which the district court had deviated more from the Guidelines range than in the case at hand, with far less justification.[1]
*271 The majority seems to believe that the particular context of the sentence in this case, involving as it does terrorist crimes, renders appropriate some form of special- — and less deferential — review. Even if Congress could constitutionally institute such a rule, to date it has not. Moreover, in Gall, the Supreme Court expressly rejected the view that “[t]he uniqueness of the individual case” in any way “change[s] the deferential abuse-of-discretion standard of review that applies to all sentencing decisions.” 128 S.Ct. at 598 (emphasis added). Indeed, Gall cautions that “[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate,” because of the nature of the offense, for example, “is insufficient to justify reversal of the district court.” Id. at 597. Under no circumstances does it fall to the appellate court to independently assess the sentencing factors and “decide de novo whether the justification for a variance is sufficient or the sentence [is] reasonable”; the appellate court may assess only whether the district court’s own determination that “the § 3553(a) factors, on the whole, justified the sentence” is reasonable. Id. at 602.
I find the majority’s insistence on refusing to defer to the district court’s considered judgment both inexplicable and deeply troubling, particularly given that the majority does so in the immediate wake of Gall and Kimbrough. In stark contrast to our sister circuits,[2] the majority has eho- *272 sen to ignore the Supreme Court’s mandate that appellate courts must, without exception, review sentencing decisions under a highly deferential standard.
I.
Although the majority recites Supreme Court sentencing directives, it utterly fails to appreciate the importance of the most fundamental of these directives — no longer may appellate courts engage in de facto de novo review of district court sentencing determinations. Instead, they must afford true deference to the district court’s greater expertise and experience in sentencing.[3] An appellate court may not reverse any sentence, even one significantly deviating from the Guidelines range, unless, after affording due deference to the district court’s judgment, the appellate court concludes that the district court abused its discretion and imposed an unreasonable sentence. Gall, 128 S.Ct. at 602; Kim-brough, 128 S.Ct. at 576. The majority correctly sets forth these legal principles, ante at 259-61, but then resolutely refuses to recognize what they mean. It refuses to acknowledge that deference means deference, that discretion means discretion, and that appellate courts exercise only a limited role in reviewing sentences. Hence, like the appellate court whose judgment the Supreme Court reversed in Gall, the majority “state[s] that the appropriate standard” is “abuse of discretion,” but actually “engage[s] in an analysis ... more closely resembling] de novo review.” Gall, 128 S.Ct. at 600.
United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), itself signaled the Supreme Court’s rejection of the majority’s approach to appellate review of sentences. Booker expressly invalidated two statutory provisions: § 3553(b)(1) (2000 ed. Supp. IV), which made the Sentencing Guidelines mandatory, and § 3742(e) (2000 ed. Supp. IV), which directed appellate courts to review de novo departures from the Guidelines. 543 U.S. at 245, 125 S.Ct. 738. But, notwithstanding Booker, some appellate courts continued to engage, as the majority does here, in de facto de novo appellate review. Thus, the Supreme Court had to unambiguously mandate the correct rule: “appellate ‘reasonableness’ review” asks only “whether the trial court abused its discretion” in sentencing. Rita v. United States, — U.S.-, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007).
Gall and Kimbrough reiterate that, for every sentencing case, the era of de novo review is over. An appellate court must defer to the district court, reviewing a sentence under a “deferential abuse-of-discretion standard,” even if the sentence is “significantly outside the Guidelines range.” Gall, 128 S.Ct. at 591 (emphasis added); see also Kimbrough, 128 S.Ct. at 576. A sentence outside the Guidelines range need only be reasonable, that is, involve no “significant procedural error” or substantive unreasonableness. Gall, 128 S.Ct. at 597. An appellate court’s independent judgment that a different sentence might be preferred “is insufficient to justify reversal of the district court.” Id.
As Judge Sutton recently observed, writing for a majority of the en banc Sixth *273 Circuit, Gall and Kimbrough, together with Rita, make clear that “Booker breathes life into the authority of district court judges to engage in individualized sentencing within reason in applying the § 3553(a) factors to the criminal defendants that come before them.” United States v. Vonner, 516 F.3d 382, 392 (6th Cir.2008) (emphasis added). But Booker only “empowered district courts, not appellate courts and not the Sentencing Commission.” Id. Moreover, “[i]f there is a pattern that emerges from Rita, Gall, and Kimbrough, it is that the district court judges were vindicated in all three cases, and a court of appeals was affirmed just once — and that of course was when it deferred to the on-the-scene judgment of the district court.” Id. The majority today refuses to acknowledge “the central lesson from these decisions — that district courts have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them.” Id.
In attempting to demonstrate that it has properly deferred to the district court, the majority offers a single justification: a strawman. The majority suggests that to affirm the sentence here would “eviscerate[ ] any form of appellate review of trial court sentencing,” instituting “a regime of total unreviewability” of sentences. Ante at 265-66, 266. Hardly. Supreme Court precedent does not require this; nor do I suggest that it does. But the Court’s precedent does require that an appellate court defer to a district court’s reasonable sentencing decisions, even when those decisions depart from the advisory Guidelines range. If the majority followed the Supreme Court teachings as faithfully as it quotes them, and if it truly engaged in the proper deferential abuse-of-discretion review, it would have to affirm the patently reasonable sentence imposed here. Only by disregarding these fundamental principles can the majority refuse to do so.
II.
In addition to its failure to follow these critical legal principles, in undertaking its review of the district court’s sentencing decision, the majority commits the same fundamental analytical error that resulted in the Supreme Court’s reversal of the Eighth Circuit in Gall. The district judge in the case at hand, like the district judge in Gall, offered a number of persuasive justifications for its sentence. But the majority, like the Eighth Circuit, makes no attempt to quantify the value of the many “justifications provided by the District Judge,” Gall, 128 S.Ct. at 594, to “take into account the totality of the circumstances,” id. at 597, or to view the justifications provided by the district court as “a whole,” id. Rather than deferentially considering together all of the district court’s justifications, the majority finds Abu Ali’s sentence unreasonable due to purported isolated errors it identifies in the district judge’s reasoning regarding a single sentencing factor.
Thus, the majority opinion, like the Eighth Circuit opinion in Gall, wholly fails to “reflect the requisite deference and does not support the conclusion that the District Court abused its discretion.” Id. at 598. The majority’s failure to follow the express guidance in Gall that appellate courts “give due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance” is baffling — and fatal. See id. at 597 (emphasis added); see also id. at 594. For any fair and deferential evaluation of all of the district court’s numerous justifications for its sentencing decision leads to only one conclusion — that the sentence is entirely reasonable.
*274 Given that the district court committed no procedural error,[4] appropriate appellate review of the justifications offered by the district court here involves only consideration of the “substantive reasonableness” of the sentence. Id. at 597. This requires an appellate court to assess “whether the District Judge abused his discretion in determining that the § 3553(a) factors supported [the] sentence ... and justified ... substantial deviation from the Guidelines range.” Id. at 600.
Section 3553(a) instructs district courts to impose a sentence “sufficient, but not greater than necessary,” to further the following purposes: “reflect the seriousness” of the crime; “promote respect for the law”; deliver “just punishment”; “deter[ ] ... criminal conduct”; “protect the public”; and provide the defendant with needed training, medical care, or treatment. 18 U.S.C.A. § 3553(a). In determining the sentence that best achieves these purposes, § 3553(a) directs the sentencing court to consider a number of factors in addition to the statutory minimum and advisory Guidelines range. Id. The district court carefully considered each of the applicable factors and concluded that they justified a sentence of thirty years’ imprisonment followed by thirty years’ supervised release.
First, the district court considered “the nature and circumstances” of the offenses and “the history and characteristics of the defendant.” Id. § 3553(a)(1). It found that these factors justified the sentence imposed for several reasons. With respect to the offenses, the court reasoned that while they were “extremely serious,” Abu Ali’s participation in them was relatively attenuated and resulted in no injury to any person or property. Thus, although Abu Ali conspired with terrorists in Saudi Arabia, the court noted that he had never planted bombs, shot or even possessed weapons, committed acts of violence, or taken any steps in the United States to further the conspiracy. Certainly, these facts do not excuse Abu Ali’s conduct, but they do provide some justification for imposing a sentence short of life imprisonment.
With respect to Abu Ali’s “history and characteristics,” the district court noted that Abu Ali had “been held under some very onerous conditions,” with extremely limited contact with family or the outside world, and yet “correction officers who supervised him” described him as “a model of behavior.” The court also relied on Abu Ali’s youth, lack of any criminal history, excellent academic record, and the many letters attesting to his decency and good character. The court concluded that “all these factors weigh in favor of’ its chosen sentence. This conclusion accords with Gall itself; there the Supreme Court expressly recognized that similar characteristics justified a sentence constituting a sizeable downward deviation from the Guidelines range.[5] 128 S.Ct. at 601-02; see also id. at 593.
*275 Second, the district court considered whether the proposed sentence would “reflect the seriousness of the offense, ... promote respect for the law, and ... provide just punishment.” 18 U.S.C.A. § 3553(a)(2)(A). The court reiterated that it regarded Abu Ali’s crimes as “very serious” and that a sentence must, and the chosen sentence did, reflect that severity. The court also, however, discussed the need for Abu Ali’s punishment to reflect only “the specific facts of this case” and not the crimes of others, such as those who had actually carried out attacks against this Country. The court concluded that a sentence that would consume the majority of Abu Ali’s natural life, forcing him “to spend most of his productive years in prison” and to lose the chance to have a family or career, would “adequately and reasonably” reflect the seriousness of his crimes, promote respect for the law, and still provide just punishment for the offenses. The court further noted that the “substantial term of supervised release” it imposed to follow the term of imprisonment would “run for the remainder of Mr. Abu Ali’s life expectancy.” Thus, the district court both explicitly recognized that the seriousness of Abu Ali’s crimes merited a severe punishment and that the sentence imposed, which would restrict Abu Ali’s liberty for the rest of his life, constituted such punishment.
Once again, Gall itself provides support for the district court’s reasoning. There the Court recognized, in particular, the serious nature of probationary sentences, observing that although not as “qualitatively ... severe” as imprisonment, a noncustodial sentence does “substantially restrict” a defendant’s “liberty.” 128 S.Ct. at 595. Focusing solely on the recommended prison sentence, the Court explained, “gives no weight to the substantial restriction of freedom involved in a term of supervised release or probation.” Id. (internal quotation marks omitted). The Court held that this rationale supplied a reasonable justification for the district court’s conclusion that an entirely noncustodial sentence, which constituted a substantial deviation from the Guidelines range of three years’ imprisonment, provided sufficient punishment.[6] Here, given the far graver crimes, this rationale obviously would not justify a purely probationary sentence, but it does supply justification for imposition of a thirty-year term of imprisonment followed by a thirty-year supervised release sentence, in lieu of a life sentence.
Third, the district court considered whether its proposed sentence would “afford adequate deterrence to criminal conduct.” 18 U.S.C.A. § 3553(a)(2)(B). The court concluded that it would, explaining that the “very lengthy” thirty-year term of imprisonment constituted a severe punishment sufficient to deter both Abu Ali and others who might contemplate such crimes. Further, the court noted that imposition of a thirty-year term of supervised release after thirty years of imprisonment would provide “additional deterrence” because “court and probation and law enforcement” would monitor Abu Ali’s con *276 duct for the remainder of his life, and he would “immediately face [yet another] lengthy term of imprisonment if he violates any law, terms of release[,] or orders of this Court during the term of supervised release.” Again, the district court’s reasoning finds support in Gall. As noted above, in Gall, the Supreme Court similarly recognized the significant restrictions on personal liberty attendant to noncustodial sentences; indeed, the Gall Court concluded that given these restrictions, no imprisonment was “necessary to deter” the defendant “from engaging in future criminal conduct.” Gall, 128 S.Ct. at 602.
Fourth, the district court considered whether its sentence would “protect the public from further crimes of the defendant.” 18 U.S.C.A. § 3553(a)(2)(C). The court concluded that it would. The court found itself persuaded by Abu Ali’s lack of any prior criminal activity, his “strong family ties,” and his “strong contacts with [the] community” that “the sentence being imposed will be adequate and reasonable to protect the public from future crimes.” Moreover, the court relied on the fact that, when released from a thirty-year term of imprisonment, Abu Ali would be “of substantially greater age” and so unlikely to commit further crimes. As the district court noted, this conclusion finds support in a Sentencing Commission study; in Kimbrough, the Supreme Court recognized the value of the Commission’s research and noted with approval the district court’s reliance on the Commission’s findings. 128 S.Ct. at 566, 568-69, 574 n. 15, 575-76.
Fifth, the district court considered whether its sentence provided Abu Ali “with needed educational ... training, medical care” or other treatment “in the most effective manner.” 18 U.S.C.A. § 3553(a)(2)(D). Again, the court found that it would. The court reasoned that thirty years of imprisonment would permit Abu Ali, who had excelled in his studies, some opportunity to pursue his education while incarcerated but would remove the burden on the public of paying for the geriatric medical care that he would likely require if given a term of life imprisonment.
Finally, after weighing all of these statutory factors, the court considered the need to avoid imposing disparate sentences upon similarly situated defendants. See id. § 3553(a)(6). Initially recognizing that there were “very few cases” similar to Abu Ali’s “for purposes of determining what sentence will constitute unwarranted disparity,” the court measured Abu Ali’s conduct against that of the only three available comparators: John Walker Lindh, Timothy McVeigh, and Terry Nichols. After doing so, the court concluded that Abu Ali engaged in conduct more similar to that of John Walker Lindh, who received a sentence of twenty years’ imprisonment, than that of Timothy McVeigh or Terry Nichols, who received a death sentence and life imprisonment, respectively.
The majority explicitly acknowledges that “the district court examined each of the § 3553(a) sentencing factors.” Ante at 261-62. Yet the majority makes no effort to follow Gall’s directives to “take into account the totality of the circumstances,” assess the overall “value of the justifications provided by the District Judge,” and consider whether “on the whole ” the court’s analysis of the § 3553(a) factors justifies the sentence. Gall, 128 S.Ct. at 594, 597 (emphasis added).
Despite the majority’s claim to the contrary, the record itself provides no excuse for the majority’s ill-considered refusal to apply the proper deferential standard of review to all of the district court’s eminently reasonable justifications for the selected sentence. According to the majori *277 ty, “the district court devoted most of its attention” to § 3553(a)(6), which “served as the driving force behind” the sentence. Ante at 262. The majority is simply wrong. Any fair reading of the record reveals that, as recounted above, the district court did not “devote[] most of its attention” to § 3553(a)(6), but rather devoted care and attention to each of the statutory sentencing factors.[7] In this regard, the Government’s arguments for vacating the sentence are telling. Neither in its appellate brief nor in a letter to this court written shortly after Gall issued, does the Government even suggest that analysis of the § 3553(a)(6) sentencing factor was the “driving force” behind the sentence. Indeed, the Government devotes little attention to this factor in its appellate brief and does not so much as mention the factor in its post-Gall letter.
Moreover, contrary to the majority’s suggestion, the district court did not rely only on the § 3553(a)(6) factor to “quantitatively locate” Abu Ali’s sentence. Ante at 262, 267. Nothing in the district court’s opinion suggests that this factor played a larger role than the other § 3553(a) factors in determining the specific sentence. In fact, the court’s reasoning regarding the other factors equally supported its selection of a sentence of thirty years’ imprisonment, followed by thirty years’ supervised release, a sentence that, notably, substantially exceeded the twenty-year statutory minimum sentence.
If the majority had followed Gall’s directives, I believe it could only have con-eluded that the district court’s analysis of the above statutory factors was reasoned and reasonable. Taken together, as they must be, the district court’s justifications provide ample support for the selected sentence. Even in its response to this dissent, the majority fails to mention, let alone dispute, many of the district court’s most persuasive justifications for the sentence. Of course, some of the justifications may be stronger than others, but when “due deference” is afforded the district court’s decision, it becomes clear that the court did not abuse its discretion in sentencing Abu Ali. See id. at 602.
III.
With minimal discussion of the district court’s thorough analysis of other statutory factors, the majority finds Abu Ali’s sentence unreasonable based on purported errors in the district court’s analysis of the final sentencing factor, the avoidance of disparate sentences. See 18 U.S.C. § 3553(a)(6). Even if a sentencing court does err in its analysis of one of the many sentencing factors it considered, that single error alone would certainly not establish that the court’s analysis was unreasonable as a whole. See Gall, 128 S.Ct. at 594, 597. Moreover, in the case at hand, the district court did not err in its consideration of even one sentencing factor. Thus, if the court’s consideration of the § 3553(a)(6) sentencing factor is scrutinized in a vacuum, as the majority improperly does, the district court’s analysis still must be judged reasonable.
*278 The majority’s argument to the contrary rests on two contentions. First, the majority contends that the district court unreasonably compared Abu Ali to Lindh because the conduct of the two assertedly differed enormously and because Lindh pled guilty while Abu Ali did not. Second, the majority contends that the district court unreasonably compared Abu Ali to Nichols and McVeigh and then found their conduct distinguishable from Abu Ali’s because they inflicted great harm on this Country, while Abu Ali’s evil plans came to nothing. Neither contention is at all persuasive.
A.
Notwithstanding the majority’s arguments, Lindh’s criminal conduct is similar — not identical, but similar — to Abu Ali’s. Lindh joined the Harakat ul-Mujahi-deen training camp seeking “to fight with the Taliban on the front line in Afghanistan,” and he “voluntarily swore allegiance to Jihad.” United States v. Lindh, 227 F.Supp.2d 565, 567-68 (E.D.Va.2002). Abu Ali joined the al-Faq’asi terrorist cell in Saudi Arabia with the goal of facilitating terrorist attacks against the United States. While at the ul-Mujahideen camp, Lindh participated in a “program focused primarily on the goals of Jihad,” and for twenty days received weapons instruction that included firing numerous rounds on various types of weapons; he then participated in training activities at an al-Qaeda-funded training camp, attended lectures by Osama bin Laden, and gained “additional, more extensive military training” in “weapons and explosives,” as well as “orienteering, navigation, and battlefield combat.” Id. Abu Ali traveled to al-Qaeda-funded safe-houses where he received similar, albeit far more limited, training in weapons and explosives.
Moreover, Lindh, after obtaining his extensive battlefield training, traveled with other al-Qaeda supporters to Northern Afghanistan where he fought on the front line against the Northern Alliance from September through November 2001. Id. at 568. After obtaining his more limited training, Abu Ali researched flights on the internet for possible hijacking, investigated targets for attack, and plotted assaults on high United States officials — but, unlike Lindh, it is not even alleged that he ever took up arms against anyone. Although Abu-Ali’s criminal conduct is certainly serious, so is Lindh’s. Abu Ali’s conduct may or may not be more serious than Lindh’s, but it certainly does not differ so much from Lindh’s as to eradicate the usefulness of any comparison between the two.
Of course, as the majority observes, pre-Gall circuit precedent rendered it reversible error for the sentencing court to disregard the difference between a defendant who refuses to plead guilty, like Abu Ali, and another who has pled guilty and thereby “accepted responsibility and provided valuable assistance to the government.” See United States v. Khan, 461 F.3d 477, 500 (4th Cir.2006); United States v. Perez-Pena, 453 F.3d 236, 242-43 (4th Cir.2006). It seems unlikely that this principle survives Gall. (The majority itself is unwilling to say that, after Gall, these cases “would require vacating” Abu Ali’s sentence. Ante at 264.) Even if this principle did survive Gall, it would only prohibit the sentencing court from comparing Abu Ali’s conduct to that of Lindh if it disregarded Lindh’s guilty plea. But here the sentencing court did not disregard this fact. Rather, the court carefully took this fact into account — and sentenced Abu Ali to a term of imprisonment fifty percent greater than Lindh’s sentence.
Moreover, neither the cases cited by the majority nor any other circuit (or Supreme *279 Court) precedent holds that a sentencing court’s selection of an appropriate comparator need rest entirely on the defendants’ relative levels of cooperation with government officials. See Khan, 461 F.3d at 500-01. Furthermore, these cases simply do not address circumstances like the one at hand, in which the sentencing court could identify only three possible, similarly situated defendants to compare to the defendant in order “to avoid unwarranted sentence disparities.” 18 U.S.C.A. § 3553(a)(6). Common sense dictates that when confronted with a small group of potential comparators, a sentencing court in its discretion may reasonably take into account as many of those individuals as possible to avoid sentencing disparities between defendants who have committed similar criminal conduct; plea status alone should not bar a comparison.[8]
And yet, the majority asserts that the difference in plea status between Lindh and Abu Ali is a critical reason there can be no “useful comparison” between the two defendants for sentencing purposes. Ante at 263-64. The majority goes so far as to claim that “any comparison to Lindh’s case would be tantamount to comparing the incomparable.” Id. The majority is certainly correct that these two individuals are not identically situated. Although both engaged in terrorist conduct, they did have distinctly different goals, and they took different steps toward achieving their goals. Lindh intended to inflict harm on our allies; he extensively prepared and trained for this and succeeded in doing so by engaging in armed battlefield warfare. Abu Ali intended to inflict harm on United States officials and citizens; he too prepared and trained (albeit less extensively) but in fact never inflicted harm. But these differences provide an insufficient basis to conclude that the sentencing court abused its discretion in finding that the two terrorists’ conduct was similar enough to warrant consideration of the sentence that had been imposed on one when imposing sentence on the other.
B.
Nor, contrary to the majority’s suggestion, ante at 263-65, did the district court err in relying on a comparison to Timothy McVeigh and Terry Nichols and then holding that Abu Ali’s conduct differed sufficiently from McVeigh’s and Nichols’ that a less severe sentence for Abu Ali would be consistent with § 3553(a)(6).
As the Tenth Circuit recounted in McVeigh’s and Nichols’ respective criminal appeals, the two men “sought, bought, and stole all the materials needed to construct” the explosive device that would ultimately *280 kill over a hundred people. United States v. McVeigh, 153 F.3d 1166, 1176-78 (10th Cir.1998). McVeigh and Nichols placed the “3,000-6,000 pound bomb comprised of an ammonium nitrate-based explosive” inside a rented Ryder truck and parked the truck in front of the Murrah Building in Oklahoma City. Id. at 1177-78. The bomb exploded at 9:02 in the morning of April 19, 1995, killing “163 people in the building and five people outside,” including nineteen children and eight federal law enforcement officials. Id. at 1177. The blast “tore a gaping hole into the front of the Murrah Building and covered the streets with glass, debris, rocks, and chunks of concrete.” Id. Nichols’ own counsel estimated that the total cost of the horrendous crimes exceeded $650 million. United States v. Nichols, 169 F.3d 1255, 1277 (10th Cir.1999).
The majority asserts that the sentencing court erred in relying on the fact that Abu Ali took “fewer” and “less significant” steps toward completing the conduct that was the subject of his conspiracy and, further, that the court erred in looking to the actual impact of the defendants’ actions. Thus, the majority holds that the sentencing court unreasonably deviated from the Guidelines on the basis of unrealized harms and improperly failed to appreciate the “utmost gravity” of Abu Ali’s terrorism-related offenses. The majority acknowledges that Abu Ali did not “do what McVeigh and Nichols did,” but seems to insist that the district court should have relied on no comparators rather than consider the differences in conduct between Abu Ali and McVeigh and Nichols. Ante at 265.
In so holding, it is in fact the majority that errs. In focusing on what it perceives to be the severity of Abu Ali’s offenses, the majority fails to appreciate and weigh the gravity of the actual harms and devastating losses of life inflicted by McVeigh and Nichols. Like Abu Ali, Nichols and McVeigh wanted to “take ... offensive action against the federal government.” McVeigh, 153 F.3d at 1177. Given the similarity of their overall objectives, the district court did not abuse its discretion in determining that a comparison between Abu Ali and McVeigh and Nichols was appropriate.
The court also did not abuse its discretion in determining that differences in the three defendants’ respective sentences were not “unwarranted” under § 3553(a)(6). Unlike Abu Ali, whose plots came to nothing, Nichols’ and McVeigh’s criminal conduct directly resulted in the loss of 168 American lives and hundreds of millions of dollars of economic destruction. Certainly this constitutes a substantial difference — and one within the district court’s discretion to consider.
Moreover, contrary to the majority’s assertion, the district court’s consideration of this difference does not “trivialize the severity of’ Abu Ali’s offenses. Ante at 264. Of course, I agree that we cannot wait until attacks have occurred to punish terrorist operatives — but the district court expressly recognized this, as even the majority acknowledges. Id. The district court imposed a heavy sentence on Abu Ali. That sentence, however, accounts for the fact that although Abu Ali, like Lindh, McVeigh, and Nichols, engaged in reprehensible conduct, in Abu Ali’s case, that conduct was highly attenuated from its intended consequences and resulted in no loss of life or economic destruction. Consideration of these factors under § 3553(a)(6) was not unreasonable.
C.
Any decision to deviate from the Guidelines range necessarily creates sentencing disparities between the person being sen *281 tenced — here Abu Ali — and other, hypothetical, defendants convicted of the same crimes and assigned identical initial Guidelines ranges. Perhaps it is the disparities with these hypothetical defendants that concerns the majority and causes it to focus its fire on the district court’s analysis of the § 3553(a)(6) sentencing factor. But if that is the case, that concern finds no support in Supreme Court precedent and provides no basis for reversing the district court’s sentencing determination.
Quite the contrary. The Supreme Court has expressly and unequivocally acknowledged that an advisory Guidelines scheme will necessarily create disparities between defendants convicted of identical crimes; it did so first in Booker, 543 U.S. at 263-264, 125 S.Ct. 738, and again more recently in Kimbrough, 128 S.Ct. at 573-74. And the Court has soundly rejected the view that such inevitable sentence disparities render a sentence unreasonable upon appellate review. Gall, 128 S.Ct. at 599-600; Kim-brough, 128 S.Ct. at 573-74. Rather, the Court has explained, a sentencing court need only “eonsider[]” this factor, Gall, 128 S.Ct. at 600, and “weigh” any disparity “against the other § 3553(a) factors.” Kimbrough, 128 S.Ct. at 574.
Without even a nod at the Supreme Court’s rejection of the notion that sentencing disparities alone may render a challenged sentence unreasonable, the majority finds the district court’s disparity comparisons “inapposite” and therefore unreasonable. Ante at 262, 267-68. Yet the majority suggests no other, more “apposite” comparisons. The majority’s reasoning leaves one to wonder whether the district court should have instead relied solely on the other statutory factors and made no comparison at all to other defendants under § 3553(a)(6).
We owe the district court deference to its analysis, given its expertise and superi- or position to judge the import of relevant facts at sentencing. Gall, 128 S.Ct. at 597. Yet the majority’s words belie any deference it purports to accord the district court. The majority criticizes the court’s selection of appropriate comparators, suggesting that only hypothetical comparators will do. And the majority finds error in the district court’s “failfure] to adequately appreciate” the magnitude of Abu Ali’s crimes relative to the other defendants it considered, ante at 264, even though the court did in fact articulate many of the majority’s concerns regarding the serious nature of Abu Ali’s offense. By simply demanding a 'different weighing of the § 3553(a)(6) considerations, the majority denies the district court the deference demanded by law. See, e.g., Gall, 128 S.Ct. at 602. Of course, our review of the sentence imposed must be “meaningful,” but it is beyond our power to reverse the sentence selected by the district court simply in order to substitute our own judgment in its place. Id. at 597.
IV.
The majority’s approach in this case reflects a fundamental misunderstanding of the shift in sentencing jurisprudence that has occurred since the Supreme Court issued its landmark decision in Booker. First in Booker, then in Rita, and, most recently, in Gall and Kimbrough, the Court has made it abundantly clear that district courts have wide discretion to apply the § 3553(a) factors to the defendants before them in order to fashion sentences that are appropriately tailored to the individual case. There can be no mistaking the Supreme Court’s repeated emphasis on the broad authority granted district judges — and the Court’s simultaneous admonition to appellate judges to refrain from anything even “resembl[ing] de novo review.” Gall, 128 S.Ct. at 600 (emphasis added). Appellate judges are not to inde *282 pendently consider whether the § 3553(a) factors justify a given sentence, regardless of whether the sentence is within or outside of the Guidelines range, and regardless of whether those judges might have selected a different sentence had they stood in the place of the district judge.
The majority today pays lip service to the standard of review to which it is bound and then proceeds to engage in the very de novo review that Gall precludes. It affords no deference to the district court’s considered judgment that the § 3553(a) factors as “a whole” support the chosen sentence and instead parses the district court’s opinion to note disagreement with the court’s application of a single statutory factor. This approach vastly oversteps the bounds of appellate review and rejects the central lesson from Booker, Rita, Gall, and Kimbrough that reviewing courts owe deference to both the overall sentence selected by the district court and the justifications given for that sentence. Proper application of this deferential abuse-of-discretion standard requires affirmance.
I regret, and respectfully dissent from, the majority’s contrary holding.

. See, e.g., United States v. Tom, 504 F.3d 89 (1st Cir.2007) (sentence for five counts of insider trading: thirty-six months' probation — 100% downward deviation from Guidelines range of thirty-seven to forty-six months’ imprisonment — justified primarily on the basis of avoiding sentencing disparity with co-defendant), vacated, -U.S. -, 128 S.Ct. 1132, 169 L.Ed.2d 945 (2008); United States v. Taylor, 499 F.3d 94 (1st Cir.2007) (sentence for sixteen counts of tax fraud: five years’ probation, including one year in halfway house — 100% downward deviation from Guidelines range of thirty to thirty-seven months’ imprisonment — justified primarily on the basis of letters detailing defendant's good works), vacated,-U.S.-, 128 S.Ct. 878, 169 L.Ed.2d 712 (2008); United States v. Garate, 482 F.3d 1013 (8th Cir.2007) (sentence for two counts of travel with intent to engage in sexual conduct with a minor: thirty months' imprisonment — 47% downward deviation from Guidelines range of fifty-seven to seventy-one months’ imprisonment — justified primarily on the basis of defendant's young age and immaturity at the time of the offense and lack of criminal history), vacated, - U.S. -, 128 S.Ct. 862, 169 L.Ed.2d 712 (2008); United States v. Pyles, 482 F.3d 282 (4th Cir.2007) (sentence for distribution of crack cocaine: five years’ probation — 100% downward deviation from Guidelines range of sixty-three to seventy-eight months’ imprisonment-justified primarily on basis of rehabilitation), vacated, —- U.S.-, 128 S.Ct. 865, 169 L.Ed.2d 713 (2008); United States v. Trupin, 475 F.3d 71 (2d Cir.2007) (sentence for tax evasion: seven months’ imprisonment— 83% downward deviation from Guidelines range of forty-one to fifty-one months’ imprisonment-justified primarily on basis of defendant’s age and family circumstances), vacated, -U.S.-, 128 S.Ct. 862, 169 L.Ed.2d 711 (2008); United States v. Gentile, 473 F.3d 888 (8th Cir.2007) (sentence for conspiracy to possess pseudoephedrine: forty-eight months’ imprisonment — 52% downward deviation from Guidelines range of 100 to 125 months’ imprisonment — justified primarily on the “relatively petty” nature of the defendant's past crimes; sentence for co-defendant: one day of time served plus probation — nearly 100% downward deviation from Guidelines range of thirty-seven to forty-six months' imprisonment — justified only on the basis of *271 family ties and responsibilities), vacated, - U.S. -, 128 S.Ct. 866, 169 L.Ed.2d 714 (2008); United States v. Kane, 470 F.3d 1277 (8th Cir.2006) (sentence for aggravated sexual abuse to child: 120 months’ imprisonment— 47% downward deviation from Guidelines range of 210 to 262 months' imprisonment— justified primarily on basis of rehabilitation), vacated, - U.S. ——, 128 S.Ct. 861, 169 L.Ed.2d 711 (2008); United States v, McDonald, 461 F.3d 948 (8th Cir.2006) (sentence for manufacturing methamphetamine and creating substantial risk to human life: 132 months' imprisonment — 50% downward deviation from Guidelines range of 262 to 327 months’ imprisonment — justified on the basis of defendant's age and unlikelihood of recidivism), vacated, -U.S. -, 128 S.Ct. 856, 169 L.Ed.2d 708 (2008); United States v. Goody, 442 F.3d 1132 (8th Cir.2006) (sentence for conspiring to manufacture and distribute methamphetamine: seventy-two months' imprisonment — 57% downward deviation from Guidelines range of 168 to 210 months' imprisonment — justified only on basis of avoiding sentencing disparity with co-conspirator), vacated, —- U.S.-, 128 S.Ct. 853, 169 L.Ed.2d 706 (2008).

. The other courts of appeals have faithfully followed the directives of Gall and Kim-brough, reviewing with great deference and affirming sentences that deviate substantially from the applicable Guidelines range. See, e.g., United States v. Vowell, 516 F.3d 503 (6th Cir.2008) (affirming a 780-month sentence for coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct and possession of child pornography, though the Guidelines range was 188 to 235 months and the statutory minimum sentence was 300 months, and noting in particular that Gall "explicitly reined in appellate review of sentences"); United States v. Lehmann, 513 F.3d 805 (8th Cir.2008) (affirming a sentence of only five years’ probation including six months' community confinement, for unlawful possession of a firearm as a previously convicted felon, though the Guidelines range was thirty-seven to forty-six months’ imprisonment, and noting that such a sentence likely would not have been affirmed under the circuit’s pre-Gall precedent); United States v. McBride, 511 F.3d 1293 (11th Cir.2007) (affirming a sentence of only eighty-four months' imprisonment for distributing child pornography, though the Guidelines range was 151 to 188 months); see also United States v. Phinazee, 515 F.3d 511, 521 (6th Cir.2008) (affirming a 300-month sentence for conspiracy to distribute crack and powder cocaine, though the Guidelines range was 360 months to life, and specifically noting that “the clear, overriding import” oiRita, Gall, and Kimbrough "is that appellate courts must respect the role of district courts and stop substituting their judgment for that of those courts on the front line”).

. As the Supreme Court observed in Gall, the sentencing court "is in a superior position to find facts and judge their import under § 3553(a) in the individual case.” 128 S.Ct. at 597 (citing Br. for Fed. Pub. & Cmty. Defenders et al. as Amici Curiae at 16). "Moreover, '[djistrict courts have an institutional advantage over appellate courts in making these sorts of determinations ... as they see so many more Guidelines sentences than appellate courts do.’ ” Id. at 598 (quoting Koon v. United States, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)).

. Neither the Government nor the majority contends to the contrary. Nor could they, for clearly the district court did not commit procedural error. The district court properly ascertained the applicable statutory minimum sentence, recognized that the Guidelines were advisory, calculated the proper Guidelines range, and then carefully determined and thoroughly explained why the sentence accorded with the purposes set forth in 18 U.S.C. § 3553(a). See Gall, 128 S.Ct. at 597.

. The majority dismisses the district court’s consideration of Abu Ali’s background and character, concluding that the offense for which he was being sentenced invalidated any other evidence of "good character.” This reasoning effectively renders any consideration of "history and characteristics” irrelevant whenever a defendant has been convicted of a serious offense. Surely this is not the result Congress intended when it specifically stated that the sentencing court “shall consid *275 er ... the history and characteristics of the defendant.” 18 U.S.C.A. § 3553(a) (emphasis added).

. The Gall Court’s discussion of the restrictions caused by noncustodial sentences substantially undermines the majority's complaint that the sentence imposed here constitutes a "forty percent” deviation from the Guidelines range of life imprisonment. The majority's calculation fails to account for the fact that, taken as a whole, the sentence of thirty years' imprisonment followed by thirty years’ supervised release will almost certainly constitute a substantial restraint on Abu Ali’s liberty for the rest of his life.

. The court's written order does dedicate more words to the more complicated § 3553(a)(6) analysis than to the other statutory factors, but it thoroughly discusses all of the factors and nowhere indicates that it relied more heavily on (a)(6) than on any other factor in selecting the sentence. Moreover, the transcript of the sentencing hearing reveals that when actually sentencing Abu Ali, the court similarly devoted careful attention to each of the statutory factors; for example, the court devoted fully as much time (and transcript pages) to consideration of the nature and circumstances of the offense and history and characteristics of the defendant, as mandated by § 3553(a)(1), as to consideration of the avoidance of disparities among like defendants, as mandated by § 3553(a)(6).

. The language of 18 U.S.C. § 3553(a)(6) confirms the conclusion that, contrary to the majority's assertion, the district court correctly declined to limit its choice of comparators based solely on plea status. Section 3553(a)(6) instructs sentencing courts to consider the sentences imposed on defendants “who have been found guilty of similar conduct” (emphasis added); the text does not require a comparison of formal "offenses of conviction,” which might better account for cases in which a defendant has negotiated a plea bargain. See, e.g., Lindh, 227 F.Supp.2d at 566 & n. 2 (permitting Lindh to plead guilty to only one of ten counts and dismissing the remaining nine on the government’s motion). Booker itself also reinforces the need for sentencing courts to focus on criminal conduct, not offenses of conviction when examining comparators. The Court took care to explain that although “Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity,” that uniformity must be based on "similar relationships between sentences and real conduct, relationships that ... [a conviction-based approach] would undermine.” Booker, 543 U.S. at 253-54, 125 S.Ct. 738 (emphasis added).